IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| LOUANA LEDBETTER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 20-3106-CV-S-WBG |
| ANDREW M. SAUL,<br>Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

**ORDER AND OPINION REVERSING THE COMMISSIONER'S FINAL DECISION
DENYING BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS**

Pending is Plaintiff Louana Ledbetter's appeal of Defendant Commissioner of Social Security's final decision denying Plaintiff's application for supplemental security income. For the following reasons, the Commissioner's decision is REVERSED, and the case is REMANDED for further proceedings.

## I. BACKGROUND

Plaintiff was born in 1967 and has a high school education. R. at 18, 39, 152. For purposes of her application for benefits, Plaintiff has no relevant past work. R. at 18. In September 2016, she applied for supplemental security income, alleging she became disabled on February 14, 2015. R. at 229-37. Her application was denied, and she requested a hearing before an administrative law judge ("ALJ"). R. at 164, 167-71, 174-76.

In September 2018, ALJ Mark Clayton conducted a hearing. R. at 27-75. On January 30, 2019, the ALJ issued his decision, finding Plaintiff is not disabled. R. at 10-20. The ALJ concluded Plaintiff's impairments of fibromyalgia and degenerative disc disease of the spine are severe. R. at 12. Relevant to this appeal, the ALJ found Plaintiff's mental impairments of anxiety disorder, depressive disorder, and bipolar disorder are not severe. R. at 12-13. The ALJ

determined Plaintiff has the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 416.967(b) except no climbing ladders, ropes and scaffolds; can frequently climb ramps and stairs; can frequently balance, stoop, kneel, crouch, and crawl; and would need to avoid concentrated exposure to humidity, vibration and pulmonary irritants." R. at 15. The RFC did not include any limitations related to Plaintiff's mental health impairments nor did the ALJ discuss Plaintiff's particular mental health impairments (regardless of severity) in his analysis of the RFC. R. at 15-17.

Based upon his review of the record, his RFC determination, and a vocational expert's testimony at the September 2018 hearing, the ALJ concluded Plaintiff could work as a marker or storage facility rental clerk. R. at 19, 71-72. Plaintiff appealed the ALJ's decision to the Social Security Administration's Appeals Council, which denied her appeal. R. at 1-3, 226. Plaintiff now appeals to this Court. Doc. 3.

## II.  STANDARD OF REVIEW

Judicial review of the Commissioner's decision is a limited inquiry into whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Turpin v. Colvin,* 750 F.3d 989, 992-93 (8th Cir. 2014). This Court must affirm the Commissioner's decision "if substantial evidence in the record as a whole supports [the] decision." *Hilliard v. Saul*, 964 F.3d 759, 761-62 (8th Cir. 2020) (citation omitted). The threshold for such evidentiary sufficiency is not high. *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion." *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (citation omitted). "As long as substantial evidence in the record supports the Commissioner's decision, [a reviewing court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would

have decided the case differently." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). In evaluating for substantial evidence, a court must consider evidence supporting the Commissioner's decision as well as evidence detracting from it. *Anderson v. Astrue,* 696 F.3d 790, 793 (8th Cir. 2015) (citation omitted). If, after reviewing the entire record, it is possible to draw two inconsistent positions, and the Commissioner has adopted one of those positions, the Court must affirm the Commissioner's decision. *See id.*

### III. DISCUSSION

Plaintiff argues this matter should be remanded because the ALJ erred in finding her mental impairments were not severe and failed to properly consider her subjective reports.

**A.     Severity of Plaintiff's Mental Impairments**

**(1)     Analysis Required at Step Two**

When determining whether an individual is disabled, the ALJ follows a five-step process. 20 C.F.R. § 416.920(a)(4). At step two, which is at issue in this matter, the ALJ determines whether the individual has an impairment or combination of impairments that is "severe." *Id.* § 416.920(c). While a claimant has the burden of establishing her impairment or combination of impairments is severe, the burden is "not great." *See Caviness v. Massanari,* 250 F.3d 603, 605 (8th Cir. 2001); *see also Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (observing severity "is not an onerous requirement for the claimant to meet."). According to the Social Security Administration:

> Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step.

SSR 85-28, 1985 WL 56856, at *4 (Jan. 1, 1985). Any doubt as to whether the requisite showing of severity has been made at step two should be resolved in favor of the claimant. *Dewald v. Astrue,* 590 F. Supp. 2d 1184, 1199 (D. S.D. 2008); *see also Gilbert v. Apfel,* 175 F.3d 602, 605

3

(8th Cir. 1999) (recognizing "contradictory evidence in the administrative record" did not support the ALJ's decision to stop the sequential analysis at step two).

An impairment or combination of impairments is considered "severe" if it "significantly limits [an individual's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); *Kirby*, 500 F.3d at 707 (citation omitted) (noting a slight abnormality that does not "significantly limit" a plaintiff's "ability to do basic work activities" will not be considered severe); *Householder v. Bowen*, 861 F.2d 191, 192 n.1 (8th Cir. 1988) (citations omitted) ("Disability benefits may be denied based on the claimant's inability to fulfill the severity requirement only if the claimant's impairments are slight and…do not affect any of the basic work activities"). "Basic work activities," which are defined as "abilities and aptitudes necessary to do most jobs," include physical functions; capacity to see, hear, and speak; understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervisors, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.922(b).

The parties disagree as to whether an ALJ is limited to medical evidence when determining whether an impairment or combination of impairments is severe. Doc. 10 at 10-11; Doc. 13 at 5-6. In 1985, a Social Security Administration ruling limited ALJs to considering only "medical findings" when determining whether an impairment(s) was severe. SSR 85-28, 1985 WL 56856, at *4. However, in 2016, the Social Security Administration issued another ruling that, in pertinent part, stated the following:

> At step 2 of the sequential evaluation process, we determine whether an individual has a severe medically determinable physical or mental impairment or combination of impairments that has lasted or can be expected to last for a continuous period of at least 12 months or end in death…. At this step, we will consider an individual's symptoms and functional limitations to determine whether his or her impairment(s) is severe unless the objective medical evidence alone establishes a severe medically determinable impairment or combination of impairments that meets our duration requirement.

4

SSR 16-3p, 2016 WL 1119029, at *10 (Mar. 16, 2016).[1] Thus, an ALJ first considers objective medical evidence when determining if an individual suffers from a severe medically determinable impairment or combination of impairments. *Id*. If the objective medical evidence alone does not establish a severe medically determinable impairment or combination of impairments, an ALJ evaluates a claimant's symptoms and functional limitations. *Id*.

### (2) The ALJ's Step Two Determination in this Case

The ALJ found Plaintiff's impairments of anxiety disorder, depressive disorder, and bipolar disorder are medically determinable but not severe. R. at 13. In reaching his decision, the ALJ considered the mental functioning areas utilized for evaluating mental disorders, the opinion of a state agency psychologist, and global assessment functioning scores.

#### (a) Mental Functioning Areas

The mental functioning areas are understanding, remembering, and applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id*. at 13-14 (citation omitted). First, the ALJ concluded Plaintiff's ability to understand, remember, and apply information is mildly impaired. R. at 13. Although Plaintiff reported difficulty remembering things, the ALJ noted she can follow oral instructions, pay bills, handle a savings account, count change, and use a checkbook. *Id*. Second, the ALJ found Plaintiff is only mildly limited in her ability to get interact with others because she spends time and gets along with others, gets along with authority figures, and has never lost a job due to an inability to get along with others. *Id*. Third, the ALJ determined Plaintiff's ability to concentrate, persist, or maintain pace is mildly limited because she can pay attention for one hour, watch television, listen to music, play videogames, use a computer for twenty to thirty minutes in one sitting, and could drive independently. *Id*. Finally, the ALJ concluded Plaintiff's ability to adapt and manage herself is

---

[1] The Court notes that both the 1985 and 2016 rulings are cited in the ALJ's decision. *See* R. at 11.

mildly limited. *Id*. Although Plaintiff reported difficulty handling stress, the ALJ observed she adapts to changes in routine, handles her own personal care, prepares meals, and goes out alone without assistance. *Id*.

### (b) State Agency Psychologist's Opinion

In addition, the ALJ considered and gave great weight to the opinion of state agency psychologist Linda Skolnick, Psy.D. R. at 14, 157-58. Based upon her review of the medical evidence, Dr. Skolnick opined Plaintiff's mental impairments were not severe. *Id*. The ALJ noted Dr. Skolnick did not have the benefit of all medical records when she issued her opinion, but she is familiar with the social security rules and regulations regarding disability. R. at 14. He also observed Dr. Skolnick provided a detailed explanation of her findings, and her opinion was "widely consistent with the overall record." *Id*. Even though evidence was added to the record after Dr. Skolnick's November 30, 2016 opinion, the ALJ found the additional records did not reflect hospitalizations, and there were no significant ongoing abnormalities on mental status examinations. *Id*. Thus, the additional records, according to the ALJ, were consistent with Dr. Skolnick's opinion. *Id*.

### (c) Global Assessment of Functioning Scores

Finally, the ALJ afforded "little weight" to the global assessment of functioning ("GAF") scores in the record. *Id*. According to the ALJ, GAF scores are considered opinion evidence but "provide no assistance in arriving at any specific quantitative limitations, and do not make a function-by-function assessment of an individual's capabilities." *Id*. (citation omitted). The ALJ found the GAF scores, which he noted are no longer utilized in the updated Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-V), were of little probative value. *Id*.

### (3) Records from Plaintiff's Mental Health Providers

When deciding whether Plaintiff's anxiety disorder, depressive disorder, and bipolar disorder are severe, the ALJ did not explicitly discuss, and apparently did not consider, the records received from Plaintiff's mental health providers: Candace Tate, Psy.D.; William Carter, Psy.D.; and Nurse Practitioners Linda Lazzari and Paula Warner. *See* R. at 13-15. These providers' records are contained in Exhibits E6F, E13F, and E17F. R. at 465-518, 673-731, 810-18. The ALJ cited generally to the entirety of these exhibits but did not refer to any specific visit with these providers. *See* R. at 13-14. Moreover, he did not discuss these providers' findings, observations, and opinions. *Id*.

#### (a) Dr. Candace Tate

Between September 2015 and November 2016, Plaintiff attended individual therapy with Dr. Candace Tate. R. at 465-74, 478-85, 488-93, 496-504, 507-08, 685-89, 692-94, 697-99, 702-06, 709-11. Except for one month during that timeframe, Plaintiff met with Dr. Tate on at least a monthly basis, and at most, three times in a month. *See id.* In total, Plaintiff had twenty sessions with Dr. Tate. *Id*. While Dr. Tate met with Plaintiff on days when her mental health waxed, there were several appointments where Plaintiff's mental health waned. Regarding the latter, Dr. Tate's records include observations, opinions, and details about Plaintiff's mood, affect, insight, judgment, memory, concentration, and attention:

- "[M]ood was depressed,"
- "Mood and affect [are] somber,"
- "[S]he has been fighting a depressed mood,"
- "[A]ffect today is somewhat agitated and depressed, congruent with her expressed mood, which is depressed,"
- "[O]verwhelmed with mixed emotions of anger, fear and saddness [sic],"
- "[M]ood and affect were mildly dysphoric,"

- "[D]ysphoric with congruent affect,"
- "Mood and affect were dysphoric, anxious,"
- "She stated she felt she had no purpose in life,"
- "[N]ot engag[ed] in worthwhile activities,"
- "Mood and affect were relatively dysthymic compared to her last visit,"
- "Mood was dysthymic with congruent affect,"
- "She reported her mood as dysthymic,"
- "Memories for recent and remote events are fair,"
- "Insight and judgment [are] fair," and
- "[A]ttention and concentration were fair."

R. at 465, 467, 469, 471, 478, 480, 482, 484, 492, 500, 502, 685-88, 692-94, 699, 704-05, 711.

In addition to the foregoing, Plaintiff and Dr. Tate completed an annual update in April 2016. R. at 509-13. Therein, Dr. Tate noted Plaintiff continues to experience depression and "generalized worrying" and "receive[s] treatment for depression and anxiety." R. at 509. According to Dr. Tate, Plaintiff endorsed symptoms of, *inter alia*, "depressed affect, diminished interest in things she enjoys, psychomotor agitation…poor concentration[ ] and indecisiveness, inability to complete tasks, social withdrawal, frequent thoughts of suicide without a definate [sic] plan, feelings of hopelessness, worthlessness, and inappropriate guilt…." R. at 510. Plaintiff also reported "symptoms of generalized anxiety disorder such as excessive daily worry about several life circumstances, motor tension with restlessness and muscle tension, autonomic hyperactivity," "feeling constantly on edge, experiencing concentration difficulties, and a general state of irritability." *Id*. Dr. Tate wrote, "It is noteworthy that [Plaintiff]…has within the last 3 months experienced several life situations that have increased her anxiety and depression." *Id*. She also noted Plaintiff's "depressive symptoms…are lifetime…." R. at 512.

8

### (b) Dr. William Carter

After Dr. Tate took another position, Plaintiff began seeing another psychologist, Dr. William Carter. R. at 711, 714. Between January 2017 and August 2018, Plaintiff met with Dr. Carter on seventeen occasions. R. at 714-20, 723-24, 728, 731, 811-12, 816-18. At their first meeting in January 2017, Dr. Carter and Plaintiff completed an annual update, like the one executed in April 2016. R. at 679-84. At that time, Plaintiff rated her depression at a seven or eight and her anxiety at a six or seven (both on a ten-point scale). R. at 679. The form also indicated Plaintiff expressed thoughts of hopelessness and had no energy or motivation. *Id.* In March 2018, Plaintiff and Dr. Carter completed another annual update. R. at 674-78. Plaintiff rated her depression at a six (on a ten-point scale), she "continues to have sad and depressed mood," and her "symptoms are consistent with present diagnoses." R. at 674, 676. Her prognosis is "fair." R. at 676.

Like Dr. Tate, Dr. Carter's notes from his meetings with Plaintiff over the course of nineteen months demonstrate her mental health waxed and waned. While Plaintiff's symptoms were better at times, she continued to have days where her symptoms were worse. Dr. Carter recorded, *inter alia*, Plaintiff was "anxious and depressed," "more anxious," "mores [sic] stressed and depressed," her "anxiety has been elevated," her "overall mood was depressive," her "anxiety and anger [were] elevated at times," she "spen[t] time alone at home and then beg[an] to have negative thoughts and anxiety increases," and she "ha[d] some thoughts of hop[e]lessness." R. at 714, 716, 719, 723, 728, 812, 816-17.

### (c) Nurse Practitioners Linda Lazzari and Paula Warner

Nurse Practitioner Lazzari began treating Plaintiff's mental health impairments in January 2016. R. at 475-76, 690-91. Lazzari treated Plaintiff three additional times in 2016, three times in 2017, and once in 2018. R. at 485-87, 494-95, 505-06, 695-96, 700-01, 707-08, 712-13, 721-

22, 725-26, 729-30. During two years of treatment, Lazzari prescribed several medications to alleviate Plaintiff's mental health symptoms, but, at times, those medications changed. R. at 476, 487, 494-95, 506, 713, 722, 726. Generally speaking, Plaintiff was prescribed three or four medications at a time to treat her mental health symptoms. *See* R. at 475-76, 485-87, 494-95, 505-06, 690-91, 695-96, 700-701, 707-08, 712-13, 721-22, 725-26, 729-30.[2]

At times, Plaintiff indicated the medications seems to help her, but Lazzari's notes reflect the medications did not always alleviate Plaintiff's mental health symptoms. For example, in November 2017, Plaintiff reported, "I am not doing well at all. My depression has been much worse." R. at 725. Although she was taking her medications as prescribed, Plaintiff rated both her depression and anxiety at an eight (both on a ten-point scale), she had suicidal thoughts, suffered from panic attacks, and felt like she was "just going to explode on the inside." *Id*. Lazzari evaluated Plaintiff's mental status, noting her behavior was "mildly restless," and she appeared "quite depressed." *Id*. At Lazzari's suggestion, Plaintiff agreed to see a crisis counselor that same day. R. at 725, 727. In addition, Lazzari changed Plaintiff's medications. R. at 726.

Similarly, in January 2018, Plaintiff informed Lazzari that she was "not doing good at all" and was "distraught and worried." R. at 729. However, Plaintiff did not want to change any medications during this appointment because she was "not thinking clearly." *Id*. Lazzari observed the following about Plaintiff's mental status: "[h]er affect today is very worried and distressed, almost distraught," and her "behavior is mildly restless." *Id*.

After missing her March 2018 appointment with Lazzari, Plaintiff was seen by another Nurse Practitioner, Paula Warner, in June 2018. R. at 813-15. Plaintiff rated her depression at a

---

[2] The Court also notes that when Plaintiff ran out of a medication in August 2017, she became "extremely depressed" and had "suicidal thoughts." R. at 721. Once she resumed the medication, Plaintiff's suicidal ideations ceased but she had difficulty sleeping, and her anxiety was still rated a seven (on a ten-point scale). *Id*. Accordingly, changes were made to her medications. R. at 722.

seven and her anxiety at an eight (both on a ten-point scale). R. at 813. When examining Plaintiff's mental status, Warner observed Plaintiff's "mood is depressed and anxious" and her "[i]nsight and judgment [are] fair." R. at 814. Her medications remained unchanged. *Id*.

### (4) The ALJ's Failure to Address Mental Health Providers' Records and Failure to Include Mental Health Limitations in RFC

The ALJ was obligated to exercise "great care" when "applying the not severe impairment concept." SSR 85-28, 1985 WL 56856, at *4. In doing so, the ALJ was required to examine Plaintiff's medical records to determine whether her mental health impairments are severe. SSR 16-3p, 2016 WL 1119029, at *10. Despite this requirement, the ALJ did not examine or discuss the records from Plaintiff's treating mental health providers, which included two psychologists and two nurse practitioners.[3] *See* R. at 13-14.

Instead, the sole evidence upon which the ALJ relied to support his conclusion that Plaintiff's mental health impairments are not severe was the opinion of the state agency psychological consultant – Dr. Linda Skolnick. R. at 14. But Dr. Skolnick never met with or examined Plaintiff, and her opinion is only based on medical evidence through November 2016. Dr. Skolnick did not have the benefit of viewing any of Dr. Carter's records or the additional records from Lazzari and Warner. Significantly, it was during the appointments with Lazzari and Warner in 2017 and 2018 that Plaintiff reported suicidal ideations, increased depression and

---

[3] Pursuant to the applicable regulation, an ALJ should generally assign more weight to the medical opinion of a source who has examined a claimant. 20 C.F.R. § 416.927(c)(1). Further, a treating medical provider's opinion is generally afforded "more weight," if not "controlling weight," because "these sources are likely to be…most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations…." *Id*. § 416.927(c). To establish a disability or impairment, a claimant must inform the Social Security Administration about or submit all evidence known to the claimant that relates to whether he or she is disabled. *Id*. § 416.912(a). In addition to evidence from the acceptable medical sources, the Social Security Administration will consider evidence from non-acceptable medical sources and nonmedical sources. *Id*. § 416.927(b), (c), (f)(1). A nurse practitioner is considered an "other source" for evidence an ALJ may consider. *See* SSR 06-03p, 71 Fed. Reg. 45593-03, 45595 (Aug. 9, 2006).

anxiety, feeling like she was "just going to explode on the inside," and reporting that she was "not doing good at all." R. at 725-26, 729-30, 813-15. Immediately following one of these appointments, Lazzari had a crisis counselor speak with Plaintiff. R. at 725, 727.

The ALJ afforded great weight to Dr. Skolnick's opinion, in part, because the post-November 2016 medical records did not include "significant ongoing abnormalities." R. at 14. Contrary to the ALJ's observation, Lazzari's and Warner's mental status examinations of Plaintiff in 2017 and 2018, included "significant ongoing abnormalities." *See* R. at 725-26, 729-30, 813-15. And these "abnormalities" mirror Dr. Carter's observations during the same time. *See* R. at 714-20, 723-24, 728, 731, 811-12, 816-18. While the record includes "normal" mental status examinations after November 2016, the ALJ's decision to selectively consider only those records does not reflect the nature and symptoms of mental illnesses. *See Mabry v. Colvin*, 815 F.3d 386, 392 (8th Cir. 2016) (finding "individuals with a mental illness may experience periods during which they are relatively symptom-free," but their "level of functioning can vary significantly over time.") (citation omitted); *see also Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001) (citation omitted) (observing mental illness is unpredictable, and thus, "[s]ymptom-free intervals and brief remissions are generally of uncertain duration and marked by the impending possibility of relapse.").[4]

In addition, Dr. Skolnick's opinion standing alone does not constitute substantial evidence in this case. This is because Dr. Skolnick, a consulting psychologist, never met Plaintiff, and her

---

[4] Remarkably, on two prior occasions, the Commissioner has determined Plaintiff suffered from severe mental health impairments. In February 2015, ALJ Robert Lynch found Plaintiff's severe impairments included, but was not limited to, recurrent major depressive order, anxiety disorder, and bipolar disorder. R. 126-40. Also, in January 2011, ALJ David Fromme concluded Plaintiff's severe impairments included, among other things, depressive disorder, anxiety with panic attacks, ADHD, and personality disorder with borderline, depressive, and dependent traits. R. 109-21. Given the nature of mental illnesses, an ALJ must consider the unpredictability of mental illness, the waxing and waning of mental health symptoms, and changes to the individual's level of functioning varying over time. *See Mabry*, 815 F.3d at 392; *Hutsell*, 259 F.3d at 711.

opinion was based on limited medical records.  *See Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998) (stating "[t]he opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence.").  Consequently, the ALJ could not rely solely on Dr. Skolnick's opinion in this case when determining whether Plaintiff's mental health limitations are severe.

Finally, in his decision, the ALJ states he "must consider all of the claimant's impairments, including impairments that are not severe," when determining Plaintiff's RFC.  R. at 12 (citations omitted).  Although the ALJ found Plaintiff had "mild" mental limitations, his RFC does not include any mental limitations.  R. at 12-15.  The section of his opinion that analyzes and discusses the RFC does not address any specific mental health impairments or limitations.  Even if the ALJ's determination that Plaintiff's mental health impairments are not severe was properly supported, the ALJ's RFC failed to comply with the applicable regulations (and the ALJ's own decision).

The Court remands this matter and directs the ALJ to consider and discuss the records from Plaintiff's mental health providers, to weigh the treating providers' medical opinions in compliance with 20 C.F.R. § 416.927(c), provide good reasons for the particular weight afforded, and determine which of Plaintiff's mental health impairments (or combination thereof) are severe under the standards discussed above applicable to the step two analysis.  To the extent the ALJ finds the treating mental health providers' records do not address Plaintiff's ability to function in the workplace, the ALJ must seek an opinion from at least one mental health provider or order a consultative examination regarding Plaintiff's mental functioning in the workplace.  In addition, the ALJ shall reassess Plaintiff's RFC and include functional limitations associated with her mental health impairments, regardless of their severity.

**B.     Plaintiff's Subjective Complaints**

Plaintiff also argues this matter should be remanded because the ALJ did not properly evaluate her subjective complaints. When evaluating a claimant's subjective complaints, the ALJ "must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions." *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (citations omitted); *see also* 20 C.F.R. § 416.929(c)(3). Further, the "ALJ may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'" *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (citation omitted). In this matter, the ALJ determined the objective medical evidence, objective findings, conservative treatment, and daily activities did not support the level of pain, fatigue, and physical limitations alleged by Plaintiff. R. at 16-17.

As set forth *supra*, section III(A)(4), the Court reverses the Commissioner's final decision and remands the matter for further proceedings related to the extent and severity of Plaintiff's mental health impairments and reassessment of the RFC. If the ALJ concludes at least one of Plaintiff's mental health impairments is severe and/or an opinion as to her mental functioning in the workplace is obtained, Plaintiff's subjective complaints regarding her mental limitations must be reevaluated. To the extent Plaintiff's mental health impairments affect her physical functioning and/or the frequency of her daily activities, this evidence would impact the ALJ's consideration of Plaintiff's subjective complaints related to her physical functioning. Accordingly, upon remand, the ALJ shall reexamine Plaintiff's subjective complaints related to her physical functioning.

## IV. CONCLUSION

For the foregoing reasons, the Court finds the substantial evidence in the record as a whole does not support the ALJ's decision. Accordingly, the Commissioner's decision is REVERSED, and the matter is REMANDED for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

DATE: June 9, 2021
                */s/ W. Brian Gaddy*
                W. BRIAN GADDY
                UNITED STATES MAGISTRATE JUDGE